IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 18, 2019 Session

## STATE OF TENNESSEE v. BRIAN WILLIAMS

**Appeal from the Circuit Court for Rutherford County**
**No. F-77685-B     Royce Taylor, Judge**

### No. M2018-01901-CCA-R3-CD

The Defendant, Brian Williams, was indicted for aggravated burglary, a Class C felony; and theft of property valued at $1000 or less, a Class A misdemeanor. See Tenn. Code Ann. §§ 39-14-103, -105, -403. The Defendant pled guilty to the theft charge and was convicted by a jury of the aggravated burglary charge. The trial court later imposed a total effective sentence of four years. On appeal, the Defendant contends that the evidence was insufficient to sustain his conviction for aggravated burglary. Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Wesley Clark, Nashville, Tennessee, for the appellant, Brian Williams.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Jennings Hutson Jones, District Attorney General; and Clyde Eric Farmer, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

The victim, Sharon Spradling, testified that in March 2017, she rented a portion of a duplex. Early that month, the victim was introduced to the Defendant by her neighbors, Alyssa Hill and Shelley.[1] The Defendant was Ms. Hill's boyfriend and homeless when he met the victim. The victim was asked to let the Defendant "stay with [her] for a couple of weeks" in her spare bedroom. The victim testified that she agreed to let the Defendant stay in her home because she had "a very hard time telling people no."

The victim estimated that the Defendant stayed at her home for "two to three weeks." The victim never gave the Defendant a key to her home. The victim admitted that she had asked the Defendant "for help," either by giving her money or doing "something of value." However, the victim testified that this "wasn't mandatory." The victim testified that the Defendant never paid her rent. The victim admitted that the Defendant's father had given her sixty dollars for rent, but that the Defendant "asked to borrow that money" and took it from the victim as soon as his father left.

The victim testified that the Defendant had been gone from her home a few days when she sent him a text message telling the Defendant that she was "tired of him leeching off of [her]" and that she did not "want him to come back." The victim estimated that this was two or three days before the burglary. The victim never saw the Defendant at her home after she sent the text message.

---

[1] There is no surname in the record for Shelley. She was also referred to as Michelle during the trial.

The victim testified that on March 26, 2017, she had an anxiety attack and "felt like [she] was having a heart attack." The victim asked Ms. Hill and Shelley to take her to the Veterans Affairs hospital. In her rush, the victim forgot to lock her front door. The victim was in the hospital for three days. When she got back from the hospital, the victim discovered that a gun, a laptop computer, a tablet, her checkbook, and her Suboxone, which had been prescribed to her to treat opioid addiction, had been taken from her home. The victim testified that she never gave the Defendant or Ms. Hill permission to enter her home while she was in the hospital.

One of the victim's neighbors, Rachel Forbes, recalled seeing a man who she thought was the Defendant looking into the windows of the victim's home one day during the week of March 23 to 27, 2017.

Ms. Hill testified that she was a co-defendant in this case. Ms. Hill testified that in March 2017, she lived across the street from the victim with Shelley. At that time, Ms. Hill was the Defendant's girlfriend. On March 26, 2017, the victim asked Ms. Hill to take her to the Veterans Affairs hospital. On the way, the Defendant called Ms. Hill and asked her what was going on. Ms. Hill testified that once she explained what was happening to the Defendant, he said that "he was going to break into [the victim's] house" to steal her prescription medications.

Ms. Hill recalled seeing the Defendant open the victim's front door and go inside the victim's home on the night of March 26, 2017. Ms. Hill testified that when she picked up the victim from the Veterans Affairs hospital, she called the Defendant and told him "he needed to hurry up." Ms. Hill testified that the Defendant then told her everything he had taken from the victim's home.

A recording of a phone call the Defendant made to his father from jail on May 18, 2017, was played for the jury. In the recording the Defendant stated that he would be "good" as long as Ms. Hill kept "her f--king mouth shut."

**ANALYSIS**

The Defendant contends that the evidence was insufficient to sustain his conviction for aggravated burglary. The Defendant argues that he and the victim had entered into an oral lease agreement under the Uniform Residential Landlord and Tenant Act. See Tenn. Code Ann. §§ 66-28-101 to -521. The Defendant argues that he was still a resident of the victim's home even after she told him not to come back because the victim failed to provide him with fourteen days' written notice of his eviction as required by the Uniform Residential Landlord and Tenant Act. The State responds that the evidence was sufficient to sustain the Defendant's aggravated burglary conviction.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light

most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence, rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. <u>See</u> <u>State v. Sheffield</u>, 676 S.W.2d 542, 547 (Tenn. 1984); <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. <u>See</u> <u>State v. Bland</u>, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." <u>Bland</u>, 958 S.W.2d at 659; <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982). A guilty verdict "may not be based solely upon conjecture, guess, speculation, or a mere possibility." <u>State v. Cooper</u>, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]here is no requirement that the State's proof be uncontroverted or perfect." <u>State v. Williams</u>, 657 S.W.2d 405, 410 (Tenn. 1983). Put another way, the State is not burdened with "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 326.

The foregoing standard "applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence."

State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Both "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." State v. Dorantes, 331 S.W.3d 370, 381 (Tenn. 2011). The duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

Aggravated burglary is the entering of a habitation without the effective consent of the property owner and with the intent to commit a felony, theft, or assault. Tenn. Code Ann. §§ 39-14-402, -403. A habitation is "any structure, including buildings, module units, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons." Tenn. Code Ann. § 39-14-401(1)(A). An owner is "a person in lawful possession of property whether the possession is actual or constructive." Tenn. Code Ann. § 39-14-401(3).

While not cited by either of the parties, a panel of this court has previously rejected a similar argument that the Uniform Residential Landlord and Tenant Act "remove[d] an essential element of the offense of aggravated burglary." State v. Henry Zillon Felts, No. M2005-01215-CCA-R3-CD, 2006 WL 2563374, at *5-6 (Tenn. Crim. App. Aug. 25, 2006) (rejecting this argument when the defendant "enjoyed only limited privileges of entry" and had never been given a key by the owner). This is because burglary "is an offense against the security interest in possession of property rather than

-6-

an offense against the legal title or ownership of the property." State v. Ralph, 6 S.W.3d 251, 255 (Tenn. 1999). Therefore, "[t]he focus is on whether the property owner consented to the entry and the defendant's purpose for entering." State v. Langford, 994 S.W.2d 126, 128 (Tenn. 1999).

Here, it was undisputed that the victim was in lawful possession of her home. While she agreed to allow the Defendant to stay in her spare bedroom, the Defendant paid no rent and did not have a key to the home. The victim told the Defendant prior to the burglary that she was "tired of him leeching off of [her]" and that she did not "want him to come back." The victim testified that the Defendant no longer had permission to enter her home after she told him not to come back. Therefore, the Defendant entered the victim's home without her effective consent while she was at the Veterans Affairs hospital. Additionally, Ms. Hill testified that the Defendant told her that "he was going to break into [the victim's] house" to steal her prescription medications. When the victim returned to her home, she found that a gun, a laptop computer, a tablet, her checkbook, and her Suboxone had been taken from her home. Accordingly, we conclude that the evidence was sufficient to sustain the Defendant's conviction for aggravated burglary.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE